Mr. Geltner, good morning to you. Good morning, Your Honor. Welcome to the Court. Please proceed. Thank you, Your Honor. I'm Michael Geltner. May it please the Court, I'm here for the appellant, and whenever I argue an appeal, I try to address or figure out the key question, which is, what did the lower court do wrong? And in this instance, I think that the fundamental thing that the lower court did wrong was ignoring the primary or cardinal tenet of contract law, and that is simply, if you go to the first line of Corbin, the main purpose of contract law is the realization of the reasonable expectations induced by the promises. That's what contract... But that means the promises that are part of the contract. Correct. In this case, the dispute is, what are those promises? Did the contract include features A and B only, or A, B, and C, and you're arguing it also included C. Absolutely right, Your Honor. So that's where the... You have to help us. Why is C part of it? C is part of it because B is a promise, and in your example, B is the warranty language in the contract, the specific language in the contract, which is at A-140, it is hereby mutually understood and agreed that as an inducement for contractor to enter into this agreement, the government has provided required information relative to the essential use of the software asset. Okay, and they did, right? There's no dispute. They did provide some information that fits that description. That's correct, Your Honor. Okay. Orally and in writing. There was nothing ever orally provided to Northrop Grumman prior to the date of the  Absolutely nothing. The record is completely clear. I thought there were discussions. There were never any discussions between Northrop Grumman and the government. The... How do we know that? Doesn't the record suggest otherwise? No. We know that from the testimony. We know that from the testimony of Mr. Johnson, who basically said that he was approached by Mr. O'Brien, the sales representative from Starburst, and Mr. O'Brien made him a pitch, in effect, from which he concluded that there was some potential for the software to work. At his deposition, he was flatly asked the question, did you have any communication? I'm on A95. Did you have any communication, if you remember, in this pre-contracting period with anybody from Logicon? Answer, not that I remember by name, not that I can recall. So his testimony gives us no basis for communication. But counsel, what I'm trying to get at is the language in the contract that you say is clear enough under our case law to work in incorporation of an extraneous document. And you gave us the language. It talks about the information provided. Can you give us any example from any court, at any level, where language that vague has been held by such court to work in incorporation? I haven't cited a case to that effect. And I haven't found one one way or another. But I would tell you that the TEG paradigm case, which we cite in our brief, specifically says that the parole evidence to rule does not bar the use of extrinsic evidence to interpret the parole. You're going off on another point. I'm not concerned about extrinsic evidence. I'm trying to find out whether the key language is just about three words here, is strong enough and clear enough to incorporate by reference the full text of an extraneous document and make it a part of a contract in a contract that contains an integration clause saying our retirement agreement is in this document, not some other documents, even if they preceded this document, this document being the contract. And my response to that, Your Honor, is that the language that I've read to you, that is the inducement language of the contract, refers to information relative to the essential use of the software. And if that is not read to incorporate something else by reference, then it incorporates nothing and then you are writing out of the contract the only language put in the contract to protect the contractor. It is that simple. But the language you're referring to is so broad and generalized that it doesn't refer specifically to anything. I thought our case law in effect said if you want to incorporate an extraneous document, you've got to refer to the document by things like date, title, who wrote it. And you have to say something like it's incorporated herein as if fully set forth or something close to that. Well, I'm not aware of any arbitrary rule of law like that in contract law. The cases that are cited for that proposition are basically- It's not an arbitrary rule. I'm sorry. Let me use the word rigid. That's a pronouncement of contract law. I don't believe- And it's clear and it's provided guidance for years. I don't think that that's accurate with respect to contract law. I think it's an accurate pronouncement of patent law. Forget about patent law. There's no need to talk about patent law cases interpreting different things in a prosecution history. Isn't Judge Lynn correct that it's a central tenet of contract law in general, and particularly federal contract law, which is severely caverned by FAR regulation, extraordinarily detailed and lengthy, that basically if you want to depend on a term, it's got to be in the document, not in some other document? I don't believe that that's true. That's partially the important- Why shouldn't it be true? Why isn't that the only sensible policy? That's why you have contracts so everybody knows what their rights are and we don't later have people saying, oh, well, I thought it was something else because he told me this two months earlier or he sent me a letter three months earlier saying blah, blah, blah. The whole point of having an integrated contract is so you don't later have disputes about who's obligated to do what for the other side. That may be true, and it would certainly be better to draft contracts with more specificity than this one, but sometimes people are imperfect. Let me ask you a different question with the limited time that we have. To be sure that I understand your argument, it's that if this preliminary document, I'll call it a letter of intent or whatever you call it, an inducement, is considered part of the contract, it's irrelevant that the software didn't work, and if it's not considered part of the contract, then they are entitled to have acted on the cancellation because of the flaws. I guess I would say if it is considered part of a contract, which I believe it is, the reason being it's the only way to give effect to the inducement language, then there was a factual statement made by the government that was false. It is a breach of warranty case. It is nothing else. This case has nothing to do with the propriety of the government's failure to exercise the documents. We need this stuff that you've offered us. That's right. What does that have to do with their entitlement to cancel when it doesn't work? Absolutely nothing. Absolutely nothing. Then why the great debate about whether this prior document is or is not part of the deal that was made? Because it is an assurance of fact, and a warranty under the Dale case is simply an assurance or an affirmation that a fact exists and a promise to indemnify it does not, if it does not. That's all a warranty is. If this warranty was true, we have no grounds to complain about the government's failure to renew. Had the government tested the software and whether it would integrate with their preexisting battle command system? I'm sorry. I didn't get the first part of the question. Had the government received and tested the software so they could see that it integrated and worked with the larger battle system into which it was supposed to be made a part? No, the testimony… Then how could they be warning that it would work? They've never seen it. Well, that's exactly my point. They made a false warranty. They made a statement. You're asking us perhaps to make a kind of a far-fetched interpretation of the letter of need. Why shouldn't we interpret the letter of need in effect to say, assuming it does what the maker told us it does, it will be a critical part of our battle system? Because it doesn't say that. If that's the context because they had never seen it, never had a chance to try it out, didn't know anything about it except oral representations by a salesman of the company, it seems to me the common sense is that the condition precedent to the statement is that it works as advertised. Because Northrop Grumman knows absolutely nothing about that. This is a classic triangle transaction where the deal is sold to the government and then the vendor goes out and resells it to the leasing company, in this case Northrop Grumman. Northrop Grumman knows nothing about this fact. It's negotiating with the Air Force, not the Army, and it says to the Air Force, we have to be certain it's essential because you have a free walk at the end of any fiscal year. So we require a representation. And the representation is that these products are essential to the operation of ABCS 6.0 as they are integral to the system. Now, essential and integral do not mean we hope it works. It certainly implies we know something about it. If they don't have that, then they have no protection at all. What's the interplay? I'm not sure I understand your answer to Judge Newman's very penetrating question. If you agree that the later clause allows them to exit the deal at an early date, then what effect are you saying that this letter of need has? Are you saying it partly cancels the clause that allows them to exit at certain stated intervals? Absolutely not. I do think it is a very important question. It's a key question. Well, I thought that's all they did is exit early. They exited early. But somehow you're saying even though they had a right to exit early, their exiting early was illegal. I have not said that at all. No, what are you saying? I have never said that. I am simply saying that. What's the connection between the extraneous letter and their right to exit the lease? Absolutely none. The letter is simply a representation or affirmation of fact that we are asked to rely on before we enter into the contract. If it's true, they can exit the contract for any zillion number of reasons. If it is false, they have agreed to indemnify us if it is false. That is all warranty law is. That's the Dale construction case. We are simply saying we asked you to tell us, make us an affirmation of fact, as to the essential use of the software that is in the contract. Why did they ask for that? Because they knew that the government could jump out at any point, had an escape clause, as the lower court said, and they needed some protection. If they needed protection, why didn't they bargain with the government and say, look, you've got to commit for a certain time period, let's say three years, and then you can exit if you aren't happy, but you've got to give us three years or it's not worth our trouble. They did bargain with the government. Yeah, but they didn't get that kind of exit language added. The government said they didn't have it, and that's in the contracting officer's decision. And so they said, well, you have to give us some protection. We have to have a warranty as to the essential use. And it is in the contract. It says it is understood as an inducement the government has provided required information relative to the essential use. Now, essential use means the use, the uses which is essential, not that we hope it works, not that we have a whispered prayer that it works. It means we've told you something about it being essential. And the contractor is simply saying, if you're going in and hoping a prayer, you can't expect us to pay out a million dollars at the beginning and go into a contract that lets you leave at any point. But if you know you really need it, then we'll take the risk. And that's all it is. That is all a warranty ever is and is in this case. We understand that. You don't have to keep repeating the fundamentals of warranty. I'm sorry. Well, we understand what it means. The question is the facts here, not general principles of law. My problem in this case, as everybody seems to recharacterize me, is complaining about the government's decision to exit the contract. And that is not my complaint. My complaint here is simply that if you have words in the contract saying that you've made an inducement, that you've made an inducement affirmation as to the essential use, that is sufficient to go into the record and see what affirmation was made about the essential use. And the testimony is very clear that there was only one. The testimony of Mr. Bernstein is that I wrote it. I gave it to the government and I said, you have to get this signed, otherwise we will not enter into the contract. And it came back to me. There's no question that the sales representative may have misled both people. But that's really not the issue because he's not a party to any of this. Who wrote the letter we're talking about? The letter was written by Mr. Bernstein of Northrop Grumman. And he told, by his own testimony, he told the Air Force that we had to have this because this is the only protection. Right, but he asked for it and the government sent it to him. Correct. When the government sent it to him, who signed it? Mr. Johnson, the head of SECOM. Right. Now, Mr. Johnson is not the contracting officer, right? Correct. So is he allowed to bind the government with respect to a contract? He couldn't bind the government unless this integrates with the inducement clause of the contract. There's no question about that. However, if you don't integrate it with the inducement clause of the contract, then, in fact, you've got the government getting an illusory promise to the contractor. It's just that simple. All right, I think we understand your case. Let's hear from the government. Mr. Crowdy. Good morning, Your Honor. Is this kind of letter some sort of standard thing? I've got the impression that this is done frequently by the military. The letter of essential need, Your Honor? Yeah. The record doesn't indicate it, and, frankly, I don't know. There was some indication, I think, in Mr. Bernstein's testimony that he had done something like this before. But I must say that, in my experience, I've never seen this letter before. So I cannot testify beyond that or cannot indicate any evidence beyond that. What could be the function of such a letter other than to give some sort of assurance to the vendor that they have a chance of making some money? Sure. It certainly could have that function, helping assure the vendor. What other function could it have? Also, of course, the letter, because I think the financing for the lease was done by yet another party. I believe it was E-Plus who financed the lease for Northrop Grumman of Memory Servers. So it could have been for them as well, some assurance that, yes, we intend to use these pieces of software. This contract didn't result from competitive bidding, right? No, Your Honor. Now, was some sort of special internal government finding required to justify a no-bid sole source contract? Not in this case, Your Honor. Actually, the IK's contract, which was the framework which was used to make this purchase, I believe actually was done by competitive bidding. It was a very large contract which allowed the government to use different vendors to purchase software. What do you consider this to be, sort of a subcontract, a satellite contract, a rider on the master contract? How should we think of it? It's a purchase order is really the best way of looking at it. Well, I understand that, but it becomes something that has all the earmarks of a contract in and of itself, it seems. In many ways, that's true, Your Honor, because it certainly is attached. The lease terms are attached to the contract. And, in fact, the lease terms themselves say we are bringing ourselves into the IK's contract. And the government has no problem with that. It is being treated as a sort of contract in and of itself for which later rules of contract interpretation should apply. And those rules, of course, being, as Your Honor has pointed out, that if you're going to bring and get another document into the government. Well, what does the letter mean? What does Johnson's letter back to Bernstein mean if it's not saying we know the system is what we need? What it said was it was integral to ABCS 6.0. And what that meant was that this is... It said integral to 6.0 and beyond. That's right. And 6.0, of course, was... What does it mean? What is the reader who receives such a letter supposed to make of it? What is a fair interpretation of that language? In many ways, that poses a problem because it's a very vague language, which was drafted by Northrop Grumman, in this case. What's vague about it? Just as you said, what does this mean? Integral to 6.0 and beyond. What is beyond? What is ABCS 6.0? Well, 6.0 is the current version of the battle system, and maybe there will be a 7.0 next year. So it apparently means the follow-on version of the battle system. As they expected, that's right, Your Honor. But again, it is very... Well, what are you suggesting, then, that integral means? Integral means... It says necessary and integral. Are those the adjectives, necessary and integral? Yes. What do they mean? Well, integral is necessary for completeness, which means that in order to have a 6.0 or ABCS, you need to have a software that's going to transmit the data. Because you do need... Yeah, but they weren't offering a software. They're offering a particular software, and the letter seems to be addressing that particular software and saying, yes, it is necessary and integral. That's right, but... But it doesn't really mean that? It doesn't mean that it's the only software that could be necessary and integral. It doesn't mean that... Yeah, but that's not the point of contention. The other side is arguing that this was a promise by the government that it would work. It would be acceptable to the Army, that that's what Johnson's letter signified. This is what we need. This is what we want. We want to buy it from you. Are you disagreeing with that, or are you agreeing with that? I can't tell. Well, Your Honor, as you put it, this is what we want. This is what we need. We're buying it from you. It's certainly what was said in the Johnson letter. It did not say, however, that it was always going to be what we needed, always going to be what we wanted. It was always going to work. We're not arguing about always. Well, I understand. I guess the problem, Your Honor, is that the letter from Johnson essentially spoke to this is what we expect. No, except it doesn't say expect. It doesn't say anything about if it works or after we test it or if our expectations are correct. It says your system is necessary, is integral, full stop. It does say that, Your Honor. It does. Does it mean something different? What it means, it means that, but I think that it's a limited meaning, however, Your Honor. I think that by virtue of the fact that things can change, and the letter never says that things cannot change, and I think that anybody in the business world and anybody in the software world especially knows that things can change. Are you arguing that the government's needs change? I really find this a very curious argument. When it turned out that the software didn't perform, isn't that something? I'm trying to understand, again, the same question that I asked Mr. Gellner, why the presence of this, I think, fairly clear statement that we want to deal with you, you have what we need. Then it turns out that it doesn't work. What difference does it make whether or not that letter is or is not integrated into the final contract if it turns out that the software does not do that which both sides understood it was supposed to do? Well, that's why the contract has what's been called the escape clause. Yes, indeed. Let's assume that this letter is integrated into the contract or is a clear statement. I'm sure a good deal of preliminary work needs to be done in preparation for performance of this contract. I can certainly understand why a contractor would want certain assurances to know that he's dealing at the appropriate level and all the rest of it. But I don't see very much emphasis on the fact that it turned out that the software was defective. Well, I think, Your Honor, that that is exactly why, and you can find it in Mr. Johnson's declaration, which is in the appendix, why the government lost its bona fide need and was able to use the escape clause was because it turned out the software didn't work and the government has no need for software that doesn't work. But look, he's basically saying Grumman would have never entered into this contract containing the escape clause at all but for the promise of suitability represented by Johnson's letter that Bernstein of Grumman had requested and which Johnson then sent him, apparently just signing the language Bernstein crafted. Yes. So if that was a critical consideration to enter into the bargain at all on the part of Grumman and it turns out to be a false representation, that does seem like it would be kind of a big problem. Well, the first problem with that, Your Honor, is that if it were such a critical representation for Grumman, they could have very easily in the contract or the lease addendum said, we're talking about this letter of essential need dated whatever. If it was important to them, they certainly had the ability and the knowledge to follow this court's law and everybody else's law. Well, who drafted the contract? Well, that part of the contract actually, their assessment was brought in by Mr. Bernstein who was from Northrop Grumman. He proposed that language and the guy that testified, it's in Mr. Kellner's brief that Mr. Bernstein did so. And he says that he had the intention of bringing the letter of essential need in but he doesn't actually do it. And as Your Honor brought up, the contracting officer in this case was not Mr. Johnson. Let me ask you this and then we'll get back to what matters, whether the letter writer back to Bernstein was Johnson or the contracting officer. What other document, logically, what other document could the reference point to other than this Johnson letter? That language in the disputed line of the contract. Is there some other document that we know of that was being referred to logically by that language? That language just says information. And there was some email traffic before the contract happened. Not necessarily Mr. Bernstein or Mr. Galvano, but there was some email traffic that Mr. Johnson talked about with both people from Starburst and Logicon talking about meetings. And in fact it's important because the meeting was going to be, if this works we want to be able to buy a whole lot more software, which of course would suggest... Well what about if we interpret the language, the disputed five words in this contract line to include the Johnson letter and the emails? That would be very good for the government, frankly. And it would also, if you include information... No, it's good for the government. I thought you were arguing against incorporation. I think it... Well definitely I argue against incorporation. I think this case and the case law is very clear that the vague statement here is not incorporation. However, it would advance the government's case inasmuch as it would demonstrate that Mr. Johnson was not misleading anybody, that there was an understanding that this was developmental software and that's why it was being purchased. What do you mean developmental software? That is, they only got 60 copies. They were saying how ABCS 6.0 worked in Fort Hood, in battlefield conditions, and if things worked very well, they were going to procure a whole lot more of it. You're saying that just the number being purchased connoted that this was still on a tryout kind of basis. Oh, certainly, Your Honor. What about the thing about Johnson? Why does it matter that Johnson signed the letter rather than somebody else? Well, again, he's not the contracting officer. Well, of course, we know that. But what does that fact tell us about whether it can be a promise that the government has to live by? Because it makes it all the more difficult, all the more important, that the contract, which is signed by the contracting officer, made clear which documents are being brought in, which promises the government is signing off on. Well, of course. But is there some independent reason why Johnson, as the signer, nullifies the power of this letter, makes it a big nothing? Well, it is a big nothing until it is brought into the contract. Well, we agree on that. He agrees on that. Indeed. But if the incorporation by reference language in the contract is operative, then does it matter at all that the document that's incorporated is signed by anybody? Oh, not at all, Your Honor. It's very clear that the case by reference is. Then what difference does it make whether the person signing this particular document had authority or not? Only for the first question, only for the question about whether or not it was incorporated by reference. It goes to who was involved in the negotiations that would have possibly brought anything in, any document into the contract by reference. It just sort of underscores that the contracting officer. Isn't that question really answered by the contract itself and what it says or doesn't say? Oh, I think so, Your Honor. It only just adds half to the argument of why you need to have it in the contract itself, because you have different parties, different individuals, who are making these promises on behalf of the government. Are you saying that the government looking at that sentence drafted by Bernstein and accepted by the government had no idea what it referred to? I think the government might have had a very different idea than Mr. Bernstein had. What would it have logically been? Which is that we said we're bringing these pieces of software in for ABCS 6.0. It's going to be tested, and it works great. But is 6.0 just a development system, or is this a system that's been deployed to 100 units or 1,000 units? It was plainly not deployed, because it was being tested at Fort Hood to see if it worked. Only at one fort? I believe so.  But the actual environmental work in the battlefield environment was Fort Hood. What I'm trying to understand, it wasn't sent all around the United States or all around the world to all the Army bases that we're going to use this battle system. Heavens, no. No. In any event, I did want to bring one point up, which was that, Judge Rochelle, you asked Mr. Gellner whether or not there had been ever any phrase that had been as vague and ambiguous as the one in this contract that had been incorporated by reference. And there is a suggestion that there's no case that we've found that actually supports that. I would suggest that both Sorrellis and a second sort of case, which we cited in our brief for general propositions about incorporation by reference, which was the New Moon shipping company, indicate cases where you had even less ambiguous language, which was still rejected by the court for incorporation by reference. Newman is what court? I'm sorry, not Newman. I'm sorry. It's New Moon. I'm sorry. New Moon is what court? Second Circuit, Your Honor. This is like way back in 1972 or something like that? It may well be. You couldn't find a more recent regional circuit case on a basic point of contract law? It was such a basic point of contract law, of course, that sometimes the best cases are the older ones. Did you search for a regional circuit law? I did, Your Honor. And, of course, the court's more recent patent case, Advanced Data Systems, which did nevertheless refer back to- I'm trying to see if we can't avoid depending on patent cases for the obvious reason that this is a contract case. Of course, Your Honor. But you looked and didn't find anything better, I take it? I did not. All right. Well, thank you. Rebuttal? Your Honor, I think you have all the issues out on the table, and I think you should look at the language. I'm happy to rely on Sorrellis. I think Sorrellis is a clear statement of the law. We've addressed it in our brief. Your response brief tries to use it as your support, not his, but that's fair. Obviously, it's your job to see if I'm right. Right, of course. But Sorrellis is an adequate authority for us. All right. We thank both counsel. We'll take the case under review. Take a brief recess. We'll take a short recess.